## IN EQUITY.

### JOHN H. STEWART AND WIFE vs. ALEXANDER H. GARDNER.

In equity causes, the court has no power to order a general reference in the same manner as if the suit were pending in a court of law, and no authority to make a compulsory order for a reference, except of such matters as were under the former practice usually referred to a master.

Testimony in equity cases (except in relation to matters which were referable to a master under the old practice,) must be taken at the special terms, or in pursuance of a stipulation of the parties.

*November Special Term*, 1847. *Herkimer County.—Motion on behalf of the Plaintiffs for a general reference of the cause to three referees;* founded on an affidavit, stating that the cause was at issue by the filing and serving a replication to the answers, and that the trial *" would require the examination of long accounts on both sides."*

F. W. HUBBARD, *for Plffs.*

F. KERNAN, *for Deft.*

GRIDLEY, Justice.—This motion is made on the supposition that a court of equity has the power to order a general reference of a cause in the same manner as if the suit were pending in a court of law. I do not so read the statute. The convention, in its wisdom, had abolished the office of Master in Chancery, and had also declared that the testimony in equity cases should be taken in like manner as in cases at law.

It soon became apparent that the *duties* of a master could not be dispensed with; and that the *nature of some causes* was such, that the trial of them by a justice at a special term would be very inconvenient if not impracticable. To obviate these difficulties the Legislature made provision for the appointment of a referee to perform a master's duties, and for a reference in certain cases in the following words: " On and after the first Monday of July next, courts of record may by an order to be entered in any suit or proceeding at law or in equity, refer any matter

*heretofore usually referred* to any clerk, Master in Chancery, or referee, to a clerk of the same court, or to any county judge or local officer, &c., or other suitable person or persons *in the same manner* as *referees have heretofore been made to any officer or person by any court, and with the same powers as have heretofore been possessed by such officer or person.*" It is to my mind quite clear that the powers conferred by this provision are to be construed *distributively*. In other words, that its design was, to authorise courts of law to refer matters "*heretofore usually referred*" by those courts, to any of the officers or persons designated in the act; and that courts of equity were authorised to refer any matter "*heretofore usually referred*" to "*any clerk or master*" to any county judge, referee, &c., in the *same manner* and *with the same powers* as was customary before the adoption of the new constitution. This construction best comports with the obvious intention of the framers of the act. They saw the necessity of some provision for the numerous interlocutory references, that are constantly required in the progress of a suit in equity, and the utter inability of a justice to state a long and intricate account at a special term; and they adopted the provision in question as a remedy for those evils. It is true that some confusion has arisen from the fact that the power to order references, was conferred upon all courts of record by a single enactment, but in classifying and distributing among the several courts the powers thus conferred, a disregard should be had to the practice which formerly prevailed in the exercise of those powers and to the mischiefs and inconveniences for which the provision under consideration was intended to furnish a remedy. The transfer of a chancery cause bodily, to one or more referees with power to hear and decide the same, is a very important and startling innovation upon the former practice of the Court of Chancery, and although there may be nothing in the constitution to prohibit the Legislature from conferring this power upon the court, and although a careful and judicious exercise of it (if it were possessed) might in a large class of cases be highly advantageous to the interests of suitors, and might greatly relieve the labors of the justices, still I am of the opinion that it has not been conferred, upon a fair and just interpretation of the enactment in question. If such had been the intention of the Legislature, it is fair to presume that they would have said so in terms, and would have accompanied so important a provision with some statement of the mode by which the finding of the referees could be brought under the review of the court. The consequence of this construction of the act is, that in equity causes the court has no authority to make a compulsory order for a reference, except of such matters as were under the former practice

usually referred to a master. When the principal matters in issue consist of accounts it would be very convenient to refer, not merely a mere statement of the account, but the *whole matter in issue*, to a referee; and I repeat that the existence of such an account as would authorise a reference at law, would warrant the reference of a cause in equity without any violation of the constitutional provision which prescribes that "testimony shall be taken in equity cases in like manner as in cases at law." But, until the Legislature shall extend the power of the court of equity in this respect (except in relation to matters as were under the old practice referable to a master) the testimony must be taken at the special terms, or in pursuance of a stipulation of the parties, who have the power to sanction by their consent any mode of bringing the facts in issue before the court, which motives of convenience or the exigency of the particular case may dictate.